**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

HENRY B. BERROCAL,                               )
                                                 )
          Plaintiff,                             )
                                                 )
     v.                                          )          Civil Action No.  26-00707 (UNA)
                                                 )
ROBERT J. CONRAD *et al*.,                       )
                                                 )
          Defendants.                            )

**MEMORANDUM OPINION**

Plaintiff, appearing *pro se*, submitted a complaint and an application to proceed *in forma pauperis* (IFP).  For the following reasons, the Court grants the IFP application and dismisses the complaint.

I.

Plaintiff is unhoused in the District of Columbia.  He sues in their personal and official capacities Director Robert J. Conrad of the Administrative Office of the U.S. Courts, former U.S. Attorney General Pamela Bondi, and Texas Attorney General Ken Paxton, as well as the United States.  Plaintiff "challenges a multi-year, multi-jurisdictional pattern of obstruction, retaliation, and system denial of access to the courts . . . [f]rom 2023 through 2026."  Compl., ECF No. 1 at 6.  He "alleges a  . . . coordinated obstruction across state courts, federal district courts, the Fifth Circuit, and the Supreme Court that prevented him from filing, pursuing, and obtaining judicial review of non-frivolous claims," *id*. at 7, and "coordinated gatekeeping by clerks, judges, jail staff, and federal agencies," *id*. at 6; *see id*. at 9-12 (summarizing plaintiff's arrests, detentions, criminal proceedings in Bexar County, Texas, civil actions in the U.S. District Court for the Western District of Texas, and appeals to the Fifth Circuit Court of Appeals).  Plaintiff seeks (1) "narrowly

tailored declaratory and injunctive relief to restore meaningful access to the courts where the cumulative operation of immunity doctrines, procedural gatekeeping, administrative practices, and delay has rendered constitutional rights illusory" and (2) monetary damages from the individual defendants. *Id*. at 7; *see id*. at 16-19 ("Declaratory ruling, injunctions, and reliefs"). Plaintiff posits "this Court has inherent equitable authority and a constitutional duty to craft relief sufficient to prevent ongoing and irreparable injury." *Id*. at 7.

II.

The complaint has several flaws starting with the individual-capacity claims. State actors like Attorney General Paxton may be held personally liable for violating one's constitutional rights while acting under color of state law. 42 U.S.C. § 1983. Similarly, the Supreme Court recognizes in narrow circumstances "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (referring to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). To state a *Bivens* or § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not plausibly alleged that the high-ranking officials sued here were personally involved in the alleged wrongdoing. Therefore, the individual-capacity claims are dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii); *cf. Farmer v. Moritsugu*, 163 F.3d 610, 615-16 (D.C. Cir. 1998) (finding "untenable" the notion that personal liability could attach to the Bureau of Prisons Medical Director in Washington, D.C. "overseeing operations in facilities nationwide" for medical decisions made and redressable at the local level).

2

III.

The official-capacity claims "[are], in all respects other than name, to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Under the doctrine of sovereign immunity, the United States and its employees performing official duties are immune from suit save "clear congressional consent[.]" *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) (federal agencies and instrumentalities performing federal functions possess sovereign immunity); *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (confirming immunity for government employees acting in their official capacity). It is "axiomatic that the United States may not be sued without its consent," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), which "must be unequivocally expressed in statutory text," not "implied," *Lane v. Pena*, 518 U.S. 187, 192 (1996) (cleaned up). Similarly, the Eleventh Amendment immunizes States and State officials from lawsuits filed against them in federal court absent their consent to be sued or Congress' "unequivocally expressed" intent to abrogate the States' sovereign immunity.[1] *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000).

The "party bringing suit . . . bears the burden of proving" a waiver of sovereign immunity. *Tri-State Hospital Supply Corp. v. U.S.*, 341 F.3d 571, 575 (D.C. Cir. 2003). Plaintiff has cited no

---

[1] The Eleventh Amendment to the U.S. Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court "long ago held that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987).

federal law waiving the United States' immunity for the claims asserted.  Nor has he cited Texas law waiving or federal law abrogating the State's immunity from this lawsuit.

IV.

Finally, Plaintiff's court access claim is elusive.[2]  But even if it rises to the level of a constitutional violation, the United States "has not rendered itself liable for constitutional tort claims." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (citing 28 U.S.C. § 1346(b)).  And contrary to Plaintiff's theory grounded in equity, Compl. at 7, this Court cannot exercise jurisdiction over its sister court in Texas nor any other court and compel it to act.  *See Klayman v. Rao*, 49 F.4th 550, 552 (D.C. Cir. 2022) (collecting cases); *In re Marin,* 956 F.2d 339, 340 (D.C. Cir. 1992) (per curiam), quoting *Panko v. Rodak*, 606 F.2d 168 (7th Cir. 1979) ("[I]t seems axiomatic that a lower court may not order the judges or officers of a higher court to take an action."); *Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996) (discussing *Rooker-Feldman* doctrine applicable to state court judgments).  Therefore, this case will be dismissed by separate order.

_____/s/_____
CHRISTOPHER R. COOPER

Date: May 15, 2026                                                           United States District Judge

---

[2]   *See Christopher v. Harbury*, 536 U.S. 403, 415, 416 (2002) (The "basis of the constitutional right of access to courts, . . . rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Therefore, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.").